1
2
3
4
5
6
7
8
9

UNITED STATES DISTRICT COURT,
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| JANE DOE, individually and on behalf of all other similarly situated, | No. _____ |
| Plaintiff, | |
| v. | **CLASS ACTION COMPLAINT** |
| FAIRFAX BEHAVIORAL HEALTH, | |
| Defendant. | **<u>DEMAND FOR JURY TRIAL</u>** |



# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ..................................................................................................1

II.     THE PARTIES.....................................................................................................2

III.    JURISDICTION AND VENUE ..........................................................................3

IV.     FACTS .................................................................................................................3

        A.      Plaintiff Doe was traumatized by baseless, invasive strip- and cavity-searches. ...................................................................................................3

        B.      Jane Doe filed grievances and video footage of the incident was destroyed. ..........5

        C.      Fairfax Hospital staff practice indiscriminate cavity searching, strip searching and video recording of patients in various states of undress. .................5

        D.      Fairfax Hospital's invasive search and video monitoring practices are motivated by discriminatory animus...................................................7

        E.      Fairfax Hospital's strip search and video monitoring practices have a disparate impact on survivors of trauma, including Jane Doe. ...........................10

V.      CLASS ALLEGATIONS ...................................................................................11

VI.     CAUSES OF ACTION ......................................................................................12

COUNT I  TITLE III OF THE AMERICANS WITH DISABILITIES ACT .............................12

COUNT II  ABUSE OF VULNERABLE ADULTS ..................................................................14

COUNT III  NEGLIGENCE .......................................................................................................15

COUNT IV  INVASION OF PRIVACY......................................................................................16

COUNT V  INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS .............................17

COUNT VI  NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS ................................17

PRAYER FOR RELIEF .............................................................................................................19

JURY TRIAL DEMANDED......................................................................................................20



Jane Doe ("Plaintiff"), brings this action individually and on behalf of a class of adult patients of Fairfax Behavioral Health ("Fairfax") who were indiscriminately strip searched upon arrival and video recorded during strip search and throughout the hospital.

## I.    INTRODUCTION

1.      It is a violation of the standard of care for a psychiatric hospital to conduct strip searches in the absence of individualized assessments that a patient possesses drugs or weapons.

2.      It is a violation of the standard of care for a psychiatric hospital to use video monitoring in the room where strip searches are conducted while patients are undressed.

3.      All inpatient psychiatric patients are entitled to care, treatment and therapies to maintain and improve their health and well-being. Most importantly for individuals with chronic mental illness, inpatient psychiatric patients are entitled to dignity, respect, compassion, and competent care.

4.      Fairfax has a blanket policy requiring all patients to remove clothing and practice of randomly strip searching patients indiscriminately. The process is video recorded by Fairfax in violation of patient's privacy.

5.      No psychiatric hospital in Washington State other than Fairfax permits its staff to arbitrarily conduct strip searches or cavity searches.

6.      No psychiatric hospital in Washington State other than Fairfax makes and keeps video recordings of patients in various states undress, including areas where strip searches and cavity searches are conducted.

7.      It is an unfair practice for a person in the operation of a place of public accommodation to fail or refuse to make reasonable accommodation to the known physical, sensory, or mental limitations of a person with a disability. Fairfax's practice of arbitrarily conducting strip-and-cavity searches of patients suffering from mental illness and use of invasive video monitoring is substantially motivated by discriminatory animus toward people with serious mental health conditions requiring inpatient treatment and restricts those patients from receiving the treatment they present for and are entitled to receive.



8.      Fairfax's blanket policy requiring all patients to remove clothing and practice of indiscriminately strip searching patients and excessive video recording violates the Americans with Disabilities Act, the Washington Law Against Discrimination, Vulnerable Adult statute, and invades of patients' privacy causing severe emotional distress, physical harm, and economic harm to Plaintiff and the Class, for which Fairfax must be held responsible.

## II.      THE PARTIES

9.      Plaintiff Jane Doe is a resident of Oak Harbor, Washington and a citizen of the United States.

10.     Defendant Fairfax Behavioral Health ("Fairfax") is the largest private provider of inpatient psychiatric services in the state of Washington. Fairfax's principal place of business is in Kirkland, Washington. Fairfax is a licensed psychiatric hospital that cares for outpatient and inpatients, whether admitted voluntarily or involuntarily.[1]

11.     Fairfax operates a 157-bed, standalone psychiatric hospital, located in Kirkland, Washington; composed of six units providing specialized treatment for mental health and co-occurring disorders (concurrent mental illness and substance abuse issues), as well as detoxification services for both adolescents and adults. Fairfax also operates a 30-bed adult general psychiatric unit, located in Everett, Washington on the seventh floor of the Providence Medical Center's Pacific campus as well as, a 34-bed unit on the campus of Evergreen Health Monroe.

12.     Fairfax offers primarily inpatient care. For example, in 2016, Fairfax received over 98% of its revenue from inpatient admissions.[2] And in 2017, Fairfax received 100% of its revenue from inpatient admission.[3]

13.     At all times material hereto, Fairfax employed nurses and other health care providers, whose names are presently unknown, to care for Plaintiff and Class members. All acts

---

[1] WASHINGTON STATE DEPARTMENT OF HEALTH, Facility Search, https://fortress.wa.gov/doh/facilitysearch/.

[2] *BHC Fairfax Hospital Inc. Year End Report to the Department of Health*, Office of Hospital and Patient Data, https://www.doh.wa.gov/Portals/1/.../2300/HospPatientData/YearEnd/YE904-2016.xlsx.

[3] *BHC Fairfax Hospital Inc. Year End Report to the Department of Health*, Office of Hospital and Patient Data, https://www.doh.wa.gov/DataandStatisticalReports/HealthcareinWashington/HospitalandPatientData/HospitalFinancialData/YearEndReports/2017HospitalYearEndReports.

CLASS ACTION COMPLAINT - 2
Case No.
003229-11/1121825 V1



and failures to act by nurses and other health care provides at Fairfax were done within the scope of their employment by Fairfax. At all times material hereto, Fairfax is vicariously liable for the acts/omissions committed by the employees and/or agents working for or on behalf of Fairfax.

14.     Upon information and belief, Plaintiffs further allege that there may be other nurses, healthcare providers, agents or employees of Fairfax, or other persons or entities whose tortious acts or omissions further contributed to the injuries and damages suffered by Plaintiffs, but whose true and correct identity is not now known to Plaintiffs. Plaintiffs will seek leave of the Court to amend this Complaint to add the names of these persons or entities when their identities become known.

### III.     JURISDICTION AND VENUE

15.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331, because this action arises under the laws of the United States. This Court also has jurisdiction pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d), because the proposed Class consists of 100 or more members; the amount in controversy exceeds $5,000,000, exclusive of costs and interest; and minimal diversity exists. This Court also has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

16.     Venue is proper in this District under 28 U.S.C. § 1391 (a)-(d) because, *inter alia*, substantial parts of the events or omissions giving rise to the claim occurred in the District and/or a substantial part of property that is the subject of the action is situated in the District.

### IV.     FACTS

**A.     Plaintiff Doe was traumatized by baseless, invasive strip- and cavity-searches.**

17.     On March 2, 2018, Jane Doe presented for inpatient admission to Fairfax Hospital in Kirkland, Washington, a psychiatric hospital, for treatment for her mental illness. At intake, Fairfax staff ordered her to completely undress for a search. Jane Doe has a history of sexual abuse and explained that to the staff member. Nevertheless, she was again ordered to completely undress. Plaintiff was not given a gown or towel to cover up during the search.

18. The staff member watched Ms. Doe undress and left the door open where other staff members could see her in various stages of undress—eventually, completely naked except for a small pair of g-string underwear.

19. Video cameras installed by Fairfax were present in the hallway, the holding area outside the bathroom, and the room where the strip search was conducted. The cameras recorded Plaintiff in a state of undress and during the events that followed. The footage, however, was destroyed by Fairfax after Ms. Doe began submitting grievances in connection with this search.

20. During the search, Ms. Doe started shaking and crying. The staff member demanded that Ms. Doe pull her underwear down to her knees, bend over, squat down, and spread her vagina and behind for a cavity search. The staff member made this demand without documenting the need for an intrusive strip search, or obtaining a clinical determination that one was necessary from a psychiatric professional.

21. In response, Ms. Doe began screaming and crying and curled up in a ball on the floor. The staff member then threatened to get a male worker to restrain Ms. Doe—who at this point was still undressed with her underpants around her knees—in order to conduct the cavity search.

22. Another female staff member intervened and managed to calm Ms. Doe down a little. The second staff member suggested that Ms. Doe spread her cheeks and walk instead of doing a cavity search. Ms. Doe complied to avoid any potential interaction with male Fairfax staff.

23. At no point during this humiliating process did the nurse or anyone at Fairfax attempt to evaluate Ms. Doe's current safety risk to herself or others. No one asked her any questions about her current thoughts with regard to self-injury or whether she was carrying anything she might use to hurt herself or others.

24. At no time during this entire episode did Plaintiff state, imply, or otherwise indicate that she had any current thoughts or intention to hurt herself or anyone else. At no time during this entire period did Plaintiff act in a manner that would have led a reasonable health care professional to believe that there was an immediate risk of harm to Plaintiff or to others.



25.     Although mental health professionals were available at Fairfax to evaluate her at intake, no one evaluated Ms. Doe's current safety risk by asking her any questions about her current thoughts regarding self-injury or whether she was carrying anything that she might use to hurt herself before demanding a strip search and threatening to get a male worker to conduct the invasive search.

**B.      Jane Doe filed grievances and video footage of the incident was destroyed.**

26.     The next day, Jane Doe tried to find someone to discuss what happened during the invasive strip search but was told there was no one for her to talk to because it was a weekend.

27.     Finally, someone told her to fill out a grievance form which she did. Over the next five days, she filled out five additional grievance forms. Plaintiff asked to see the policy on searches but Fairfax staff refused to show it to her and Plaintiff was told to "get over it."

28.     Video footage of this incident was destroyed after Plaintiff began filing grievances in connection with it.

29.     Plaintiff's emotional/mental health continued to decline during her stay at Fairfax. This decline is directly attributable to the humiliating invasion of privacy and bodily autonomy perpetrated by Fairfax and its staff.

30.     Fairfax failed to provide safe, non-abusive, treatment with dignity and privacy. As a result of the March 2, 2018 strip search, Plaintiff experienced severe trauma, nightmares, hopelessness, and greatly increased urges to harm and kill herself. In fact, Plaintiff attempted suicide after her release from Fairfax.

31.     After leaving Fairfax in March 2018, Plaintiff has been hospitalized three times for inpatient mental health treatment. These hospitalizations were a direct result of the Fairfax's pattern and practice of conducting strip searches on incoming patients without first performing an individualized risk assessment and video recording.

**C.      Fairfax Hospital staff practice indiscriminate cavity searching, strip searching and video recording of patients in various states of undress.**

32.     Fairfax has a blanket policy requiring all patients to remove their clothing and a practice of randomly strip-searching patients indiscriminately. This process is video recorded by

CLASS ACTION COMPLAINT - 5
Case No.
003229-11/1121825 V1


HAGENS BERMAN

1301 SECOND AVENUE, SUITE 2000 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

Fairfax in violation of the patient's privacy. Fairfax uses video cameras in the hall, the holding area outside the bathroom, and the room where the strip searches are conducted. Fairfax makes and keeps these video recordings to protect itself from liability, and not for any legitimate medical reasons or out of concern and care for its patients' well-being.

33.    Not only do these practices violate the standard of care for a psychiatric hospital, they have no connection to any legitimate psychiatric purpose. By way of comparison, other hospitals have policies that significantly limit staff members' ability to conduct a strip-search or a cavity-search. These policies set forth layers of measures before resorting to a strip search. For example, at Eastern State Hospital, a patient must "verbalize a suicidal or homicidal plan with covert or overt messages indicating *the means are on his/her person and refuses to give it to staff.*"[4] A body cavity search requires "credible report that a patient has concealed contraband in a body cavity (e.g. glass in vagina, illegal drugs in rectum)."[5] A physician must interview the patient in order to conduct a cavity search, and all viable alternatives to a cavity search, such as x-ray or the patient's voluntary removal of the object must be eliminated before conducting the search.[6] At Western State Hospital, a strip- or cavity-search may only be conducted where there is a "reasonable suspicion a patient possesses restricted items that constitute an <u>immediate</u> threat to life or safety."[7] Western State Hospital staff are required to conduct the least intrusive type of search necessary.[8]

34.    Other institutions require privacy safeguards for patients, including a requirement that the searches be conducted in a private room without a camera. At Eastern State Hospital, a strip search requires two staff members of the same sex be present, and that they conduct the

---

[4] Contraband Search, Eastern State Hospital Man § 1.39, at 7 (effective June 1993, last reviewed May 2017) (emphasis added).

[5] Contraband Search, Eastern State Hospital Man § 1.39, at 8 (effective June 1993, last reviewed May 2017).

[6] Contraband Search, Eastern State Hospital Man. § 1.39, at 8 (effective June 1993, last reviewed May 2017).

[7] Searches, Western State Hospital, Policy 13.06(F) (issued March 2017) (emphasis in original).

[8] Searches, Western State Hospital, Policy 13.06(A) (issued March 2017).

HB  HAGENS BERMAN

1301 SECOND AVENUE, SUITE 2000 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

search as quickly as possible so the patient is not unclothed any longer than is necessary.[9] A cavity search must be conducted by a physician and an RN of the same sex as the patient.[10]

35.     As yet another layer of protection for patients, other institutions require layers of oversight before a strip- or a cavity- search can be conducted. At Eastern Washington State Hospital, for instance, a physician must order a strip-search. And the hospital's CEO or designee must authorize a cavity search.[11] At Western State Hospital, a written physician's order is required for either a strip- or a cavity-search.[12]

36.     Other institutions furthermore require documentation of the reasons, results, and persons involved in a search.[13]

37.     On information and belief, no psychiatric hospital in Washington State other than Fairfax permits its staff to arbitrarily conduct strip searches or cavity searches.

38.     On information and belief, no psychiatric hospital in Washington State other than Fairfax makes and keeps video recordings of patients in various states of undress.

**D.     Fairfax Hospital's invasive search and video monitoring practices are motivated by discriminatory animus.**

39.     Stigma about people suffering from mental illness is deeply embedded in social and cultural norms. Such stigma is a baseless, prejudicial attitude that discredits individuals suffering from mental illness, marking them as tainted and devalued.[14] Stigma results in discrimination in employment, housing, medical care, and social relationships. Public stigma reflects a larger social and cultural context of negative community-based attitudes, beliefs, and predispositions that shape informal, professional, and institutional responses.[15]

---

[9] Contraband Search, Eastern State Hospital Man. § 1.39, at 7-8 (effective June 1993, last reviewed May 2017).

[10] Contraband Search, Eastern State Hospital Man. § 1.39, at 8 (effective June 1993, last reviewed May 2017).

[11] Contraband Search, Eastern State Hospital Man. § 1.39, at 7-8 (effective June 1993, last reviewed May 2017).

[12] Searches, Western State Hospital, Policy 13.06(B)(1), (F) (issued March 2017).

[13] Searches, Western State Hospital, Policy 13.06(G) (issued March 2017); Contraband Search, Eastern State Hospital Man. § 1.39, at 3 (effective June 1993, last reviewed May 2017).

[14] Pescosolido, *et. al.*, *A Disease Like Any Other? A Decade of Change in Public Reaction to Schizophrenia, Depression, and Alcohol Dependence*, Am J Psychiatry (2010), 167:1321-1330.

[15] *Id.*

CLASS ACTION COMPLAINT - 7
Case No.
003229-11/1121825 V1

HAGENS BERMAN

1301 SECOND AVENUE, SUITE 2000 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

40.     Individuals with mental illness are subjected to prejudice and discrimination from others (i.e., received stigma), and they may internalize feelings of devaluation (i.e., self-stigma). On a societal level, this stigma has been implicated in low service use and inadequate funding for mental health research and treatment (i.e., institutional stigma).[16]

41.     Much of the stigma associated with mental illness results from conflating mental illness with violence. Sensational news reporting on violent crimes committed by people with mental illness, particularly mass shootings, perpetuates the stigma. These reports focus on mental illness, ignoring the fact that most of the violence in society is caused by people without mental illness. This societal bias contributes to the stigma faced by those with a psychiatric diagnosis, which leads to discrimination.[17]

42.     "Most people with mental illness are not violent toward others and most violence is not caused by mental illness, but you would never know that by looking at media coverage of incidents," says Emma E. McGinty, PhD, MS, an assistant professor in the departments of Health Policy and Management and Mental Health at the Bloomberg School. "Despite all of the work that has been done to reduce stigma associated with mental health issues, this portrayal of mental illness as closely linked with violence exacerbates a false perception about people with these illnesses, many of whom live healthy, productive lives."[18]

43.     Although mental health professionals hold more positive attitudes than the general public about people with mental health problems, strong stereotypes persist in both groups.[19] In a 2014 study of Washington State mental health professionals, many providers held negative attitudes about a hypothetical vignette character with symptoms of schizophrenia—nearly a third said it was likely that this individual would be violent toward others.[20] Yet study after study

---

[16] *Id.*

[17] *Id.*

[18] *Study: News Stories Often Link Violence With Mental Health Illness, Even Though People With Mental Health Illness Are Rarely Violent*, Johns Hopkins Bloomberg School of Public Health (2016), https://www.jhsph.edu/news/news-releases/2016/study-news-stories-often-link-violence-with-mental-health-llness-even-though-people-with-mental-health-illness-are-rarely-violent.html.

[19] Stuber JP, *Conceptions of Mental Illness: Attitudes of Mental Health Professionals and the General Public* (2014).

[20] *Id.*

HAGENS BERMAN

1301 SECOND AVENUE, SUITE 2000 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

confirms that schizophrenia, major depression, or bipolar disorder alone do not predict violence.[21] A study from 1998, for example, followed patients released from psychiatric hospitals and found that they were no more prone to violence than other people in their communities unless they also had a substance abuse problem.[22] And a 2009 study analyzing the results of the National Epidemiologic Survey on Alcohol and Related Conditions confirmed that serious mental illness is not by itself a predictor of violence.[23]

44.     The biases and prejudices held by mental health treatment providers can have a significant negative impact on treatment outcomes and quality of life.[24] People with mental disorders engage with mental health professionals at a vulnerable time. Even a small number of professionals engaging in the denigration of people with mental illness or holding low expectations for improvement translates into negative treatment outcomes and a reluctance to seek mental health treatment in the future.[25]

45.     Even though studies have shown that up to one-third of mental health professionals in Washington State incorrectly associate serious mental illness with violence, Fairfax has failed to limit the operation of this bias against its patients. Fairfax does not restrict arbitrary searches and invasive monitoring. This allows the discriminatory animus of its staff against people with mental illness to go unchecked. Staff at Fairfax may indiscriminately strip search, cavity search, and video record of patients without any justification, oversight, or documentation.

46.     Fairfax's practices—and its failure to limit the discretion of its staff—means that a substantial number of its mental health patients do not have reasonable access to inpatient care for mental health disorders.

---

[21] Elbogen, Johnson, *The Intricate Link Between Violence and Mental Disorder; Results From the National Epidemiologic Survey on Alcohol and Related Conditions*, ARCH GEN PSYCHIATRY (2009), 66(2):152-161.

[22] MacArthur Community Violence Study (2001), http://www.macarthur.virginia.edu/violence.html.

[23] Elbogen, Johnson, *The Intricate Link Between Violence and Mental Disorder; Results From the National Epidemiologic Survey on Alcohol and Related Conditions*, ARCH GEN PSYCHIATRY (2009), 66(2):152-161.

[24] Stuber JP, *Conceptions of Mental Illness: Attitudes of Mental Health Professionals and the General Public* (2014).

[25] *Id.*



47.     Fairfax could easily provide reasonable access to care for mental health patients by implementing the safeguards that other institutions already use: (1) a tiered approach that requires additional justification as searches become more invasive, (2) an oversight scheme that requires escalating approval as searches become more invasive; and (3) a requirement that the reasons, results, and persons involved in a search be documented. Fairfax can also easily restrict video monitoring to areas where patients are fully clothed, as do other institutions.

**E.     Fairfax Hospital's strip search and video monitoring practices have a disparate impact on survivors of trauma, including Jane Doe.**

48.     Trauma is a near universal experience of individuals with behavioral health problems.[26] Approximately 90% of those seeking inpatient services are trauma survivors.[27]

49.     Retraumatization occurs when patients experience something that makes them feel as though they are undergoing another trauma, such as being involuntarily touched, forced, or held down.[28]

50.     All inpatient psychiatric patients are entitled to care, treatment and therapies to maintain and improve their health and well-being. Most importantly for individuals with chronic mental illness, inpatient psychiatric patients are entitled to dignity, respect, compassion, and competent care.

51.     The practice of requiring psychiatric patients to strip can cause patients with a history of sexual abuse severe anxiety because it triggers memories of prior abuse.

52.     It is well recognized by mental health professionals that in the absence of an emergency, an individualized assessment should be made by a mental health professional before a strip search is conducted. It is also well recognized by mental health professionals that for some patients, requests or requirements that they strip and be searched can cause turmoil,

---

[26] *Trauma-Informed Care*, National Council for Behavioral Health (2019), https://www.thenationalcouncil.org/topics/trauma-informed-care/.

[27] Mueser, Essock, Haines, Wolfe & Xie, *Posttraumatic Stress Disorder, Supported Employment, and Outcomes in People with Severe Mental Illness*, US National Library of Medicine National Institute of Health (2004), https://www.ncbi.nlm.nih.gov/pubmed/15616477.

[28] *A Treatment Improvement Protocol: Trauma-Informed Care in Behavioral Health Services, TIP* 57, SAMHSA (2014), http://store.samhsa.gov/product/TIP-57-Trauma-Informed-Care-In-Behavioral-Health-Services/SMA14-4816.

CLASS ACTION COMPLAINT - 10
Case No.
003229-11/1121825 V1


1301 SECOND AVENUE, SUITE 2000 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

1    extreme agitation, panic, and exacerbates existing psychiatric conditions including anxiety,

2    depression, and post-traumatic stress disorder.

3        53.    Fairfax's pattern and practice of indiscriminately performing invasive searches of

4    patients and excessive use of unnecessary video recording strip searches and throughout the

5    hospital is negligent, violates the Vulnerable Adult statute and the Washington Law Against

6    Discrimination, and invades patients' privacy causing severe emotional distress, physical harm,

7    and economic harm to Plaintiff and the Class, for which Fairfax must be held responsible.

8                        **V.      CLASS ALLEGATIONS**

9        54.    Plaintiff brings this action pursuant to Federal Rule of Civil Procedure 23(b)(3)

10    and 23(c)(4) on behalf of themselves and the following Class:

11                All adult inpatients of Fairfax Behavioral Health who were
                  arbitrarily strip- or cavity-searched upon admission and were video
12                recorded throughout the hospital.

13        55.    The Class consists of hundreds, of individuals, if not more, making joinder

14    impracticable, in satisfaction of Fed. R. Civ. P. 23(a)(1). The exact size of the Class and the

15    identities of the individual members are ascertainable through records maintained by Fairfax.

16        56.    The claims of Plaintiffs are typical of the Class. The claims of the Plaintiff and the

17    Class are based on the same legal theories and arise from the same unlawful pattern and practice

18    of strip searching patients without particularized suspicion and excessive use of video recording

19    throughout the hospital.

20        57.    There are many questions of law and fact common to the claims of Plaintiff and

21    the Class, and those questions predominate over any questions that may affect only individual

22    Class Members within the meaning of Fed. R. Civ. P. 23(a)(2) and (c)(4).

23        58.    Common questions of fact and law affecting members of the Class include, but

24    are not limited to, the following:

25                a.    Whether Fairfax employees fail to provide mental health treatment and

26    deny reasonable accommodations to seriously mentally ill patients who require inpatient

27    treatment by performing strip- and cavity-searches without justification, oversight or

28    documentation.

CLASS ACTION COMPLAINT - 11
Case No.
003229-11/1121825 V1


1301 SECOND AVENUE, SUITE 2000 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

b.      Whether Fairfax's pattern and practice of performing invasive searches of patients without particularized suspicion violates the Americans with Disabilities Act;

c.      Whether Fairfax's pattern and practice of performing invasive searches of patients without particularized suspicion violates the Vulnerable Adult statute;

d.      Whether Fairfax's pattern and practice of performing invasive searches of patients without particularized suspicion violates the Washington Law Against Discrimination;

e.      Whether Fairfax's use of video cameras in the hall, in the holding area outside the bathroom, and in the room where strip searches are being conducted invades patient privacy; and

f.      Whether Fairfax's practice of unjustified, unsupervised, and undocumented strip- and cavity-searches and practice of video-recording patients denies those experiencing mental illness from receiving the treatment they present for and are entitled to receive.

59.      Absent a class action, most of the members of the Class would find the cost of litigating their claims to be prohibitive and will have no effective remedy. The class treatment of common questions of law and fact is also superior to multiple individual actions or piecemeal litigation in that it conserves the resources of the courts and the litigants and promotes consistency and efficiency of adjudication.

60.      Plaintiff will fairly and adequately represent and protect the interests of the Class. Plaintiff has retained counsel with substantial experience in prosecuting complex litigation and class actions. Plaintiff and her counsel are committed to vigorously prosecuting this action on behalf of the other respective Class Members, and have the financial resources to do so. Neither Plaintiff nor her counsel has any interests adverse to those of the other members of the Class.

## VI.      CAUSES OF ACTION

### COUNT I

### TITLE III OF THE AMERICANS WITH DISABILITIES ACT

61.      Plaintiff realleges and incorporates by reference the allegations contained in the previous paragraphs.



62.     The Americans with Disabilities Act ("ADA") was passed in 1990 to "provide a clear and comprehensive national mandate for the elimination of discrimination against people with disabilities," 42 U.S.C. § 12101(b)(1). Congress explicitly defined discrimination to include "over-protective rules and policies," "failure to make modifications to existing ... practices," and "segregation, and relegation to lesser services," 42 U.S.C. § 12101(a)(5).

63.     When Congress passed the ADA, it intended to "address the major areas of discrimination faced day to day by people with disabilities," 42 U.S.C. § 12101(b)(4), including in the area of "health services," 42 U.S.C. § 12101(a)(3).

64.     Fairfax is a "place of public accommodation" as that term is defined in Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181(7)(F), 28 C.F.R. § 36.104. The ADA prohibits discrimination by a public accommodation against any individual on the basis of disability. 28 C.F.R. § 36.201(a).

65.     Plaintiff and the class suffer from serious mental health conditions that require inpatient treatment and impair their ability to request accommodations. They are members of a protected class of people with disabilities under the ADA.

66.     Title III of the ADA prohibits public accommodations from discriminating against individuals with disabilities in the full and equal enjoyment of the goods, services, facilities, privileges, advantages or accommodations of any place of public accommodations, 42 U.S.C. § 12182(a). The definition of discrimination includes "failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages, or accommodations." 42 U.S.C. § 12182(b)(2)(A)(ii).

67.     Fairfax's practice of unjustified, unsupervised, and undocumented strip- and cavity-searches denies those experiencing mental illness from receiving the treatment they require and are entitled to receive. Fairfax's humiliating, unchecked search practices proximately resulted in negative treatment outcomes for Jane Doe and the Class, as well as substantial mental

and physical anguish. These practices are substantially motivated by discriminatory animus towards people with serious mental health conditions requiring inpatient treatment. These practices deliberately required Plaintiff and the class to endure unnecessary hardship in order to access a program or service. That hardship could easily be eliminated by a reasonable accommodation, such as the policies and practices implemented by other institutions set forth in paragraphs 33 through 36 and paragraph 47 of this Complaint. Fairfax has thus failed to provide class members with the reasonable accommodations required by the federal disability statutes, failing to ensure them meaningful access to the benefits to which they are entitled.

68.   Fairfax's practice of recording patients during strip- and cavity-searches restricts those experiencing mental illness from receiving the treatment they require and are entitled to receive. Fairfax's humiliating video recording practices proximately resulted in negative treatment outcomes for Jane Doe and the Class, as well as substantial mental and physical anguish. This practice is substantially motivated by discriminatory animus towards people with serious mental health conditions requiring inpatient treatment. This practice deliberately required Plaintiff and the class to endure unnecessary hardship in order to access a program or service. That hardship could easily be eliminated by a reasonable accommodation, such as a the policies and practices implemented by other institutions set forth in paragraphs 33 through 36 and paragraph 47 of this Complaint. Fairfax has thus failed to provide class members with the reasonable accommodations required by the federal disability statutes, failing to ensure them meaningful access to the benefits to which they are entitled.

## COUNT II

### ABUSE OF VULNERABLE ADULTS

69.   Plaintiff re-alleges and incorporates by reference the allegations contained in the previous paragraphs.

70.   At all times, Fairfax was required to comply with the Vulnerable Adult statute at RCW 74.34, *et seq.*

71.   RCW 74.34.021 defines a "vulnerable adult" as "a person…admitted to any facility."

CLASS ACTION COMPLAINT - 14
Case No.
003229-11/1121825 V1



72.     Fairfax Behavioral Health is a "facility," as defined in RCW 74.34.020.

73.     Plaintiff and Class members are vulnerable adults as define under RCW 74.34.020.

74.     Fairfax violated the Vulnerable Adult statute by, among other things, subjecting Plaintiff and Class members to abuse, mental abuse, and/or neglect as defined under RCW 74.34.020.

75.     As a direct and/or proximate result of Fairfax's actions and/or inactions, Plaintiff and Class members were damaged.

76.     In addition to other remedies available under the law, a vulnerable adult who has been subjected to abuse, mental abuse, and/or neglect either while residing in a facility shall have a cause of action for damages on account of his or her injuries, pain and suffering, and loss of property sustained thereby.

77.     As a result of Fairfax's acts and/or omissions described herein, Plaintiff and Class members shall be awarded his or her actual damages, together with the costs of the suit, including a reasonable attorneys' fee. The term "costs" includes, but is not limited to, the reasonable fees for a guardian, guardian ad litem, and experts, if any, that may be necessary to the litigation of a claim brought under this section.

## COUNT III

## NEGLIGENCE

78.     Plaintiff realleges and incorporates by reference the allegations contained in the previous paragraphs.

79.     By seeking psychiatric treatment from Fairfax, a special, confidential, and fiduciary relationship between Plaintiffs and Fairfax was created, resulting in Fairfax owing Plaintiffs a duty to use care to ensure their safety and freedom from assault, abuse, and molestation while interacting with their employees, representatives, and/or agents.

80.     Fairfax had a duty to hire competent, qualified and experienced employees who were knowledgeable and familiar with the proper standards of care of vulnerable adults.



81.    Fairfax had a duty to train and supervise their employees, agents and other individuals hired by them to provide safe and proper care to vulnerable adults who were either voluntarily admitted or involuntarily committed patients at Fairfax.

82.    Fairfax violated their duty of care and their duty to act reasonably by, among other things, performing invasive searches of patients without particularized suspicion.

83.    Fairfax violated their duty of care and their duty to act reasonably by, among other things, using video cameras outside the bathroom, where patients change and in the seclusion room where invasive searches are conducted.

84.    Fairfax violated their duty of care by, among other things, failing to adequately instruct, monitor, and supervise their employees and agents regarding what searches can be done and with what protections.

85.    As a direct and/or proximate result of Fairfax's actions and/or inactions, Plaintiff and Class members were damaged.

**COUNT IV**

**INVASION OF PRIVACY**

86.    Plaintiff re-alleges and incorporates by reference the allegations contained in the previous paragraphs.

87.    Fairfax uses video cameras in the hall, in holding area outside bathroom, and in the room where the strip searches are conducted.

88.    Although hospitals can have legitimate reasons to video record patients, Fairfax's practice violated the standard of care.

89.    Fairfax intentionally intruded upon Plaintiff and Class members' solitude, seclusion or private affairs and concerns by recording patients in the hallway, in holding area outside the bathroom, and in the room where strip searches are conducted. This intrusion is highly offensive to reasonable individuals, such as Plaintiff and the Class members, and was totally unwarranted and unjustified constituting an invasion of privacy.

90.    As a direct and/or proximate result of Fairfax's actions and/or inactions, Plaintiff and Class members were damaged.



HAGENS BERMAN

1301 SECOND AVENUE, SUITE 2000 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

**COUNT V**

**INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

91.     Plaintiff realleges and incorporates by reference the allegations contained in the previous paragraphs.

92.     Fairfax's extreme and outrageous conduct intentionally or recklessly caused severe emotional distress to Plaintiff and the Class members.

93.     Fairfax acted with intent or recklessness, knowing that the pattern and practice of indiscriminately strip-searching psychiatric patients, many of whom have been sexually and physically abused, would likely cause emotional distress. Additionally, Fairfax acted with intent or recklessness, knowing that the use of video cameras in the area outside the bathroom where patients are required to undress and in the room where strip searches are conducted, would likely cause emotional distress.

94.     Fairfax's conduct caused suffering for Plaintiff and Class members at levels that no reasonable person should have to endure.

95.     As a direct and/or proximate result of Fairfax's actions, Plaintiff and Class members were damaged.

**COUNT VI**

**NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS**

96.     Plaintiff realleges and incorporates by reference the allegations contained in the previous paragraphs.

97.     Fairfax's extreme and outrageous conduct caused severe emotional distress to Plaintiff and the Class members.

98.     Fairfax knew that the pattern and practice of indiscriminately strip searching psychiatric patients, many of whom have been sexually and physically abused, would likely cause emotional distress. Additionally, Fairfax knows that the use of video cameras in the area outside the bathroom where patients are required to undress and in the room where strip searches are conducted, would likely cause emotional distress.



HB HAGENS BERMAN

1301 SECOND AVENUE, SUITE 2000 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

99.     Fairfax's conduct caused suffering for Plaintiff and Class members at levels that no reasonable person should have to endure.

100.     As a direct and/or proximate result of Fairfax's actions, Plaintiff and Class members were damaged.

## COUNT VII

### WASHINGTON LAW AGAINST DISCRIMINATION

101.     Fairfax Behavioral Health is a place of public accommodation.

102.     Plaintiff and the class suffer from serious mental health conditions that require inpatient treatment. They are members of a protected class of people with disabilities related to the presence of a mental health disability.

103.     Under RCW 49.60.030(l)(b), The Washington Law Against Discrimination ("WLAD") secures the right to "full enjoyment" of any place of public accommodation, including the right to purchase any service or commodity sold by any place of public accommodation "without acts directly or indirectly causing persons of [a protected class] to be treated as not welcome, accepted, desired, or solicited." See RCW 49.60.040(14). Similarly, WLAD prohibits "any person or the person's agent or employee [from committing] an act which directly or indirectly results in any distinction, restriction, or discrimination" based on a person's membership in a protected class. RCW 49.60.

104.     The WLAD protects the customer's "full enjoyment" of the services and privileges offered in public accommodations. RCW 49.60.030(l)(b). WLAD's broad definition of "full enjoyment" extends beyond denial of service to include liability for mistreatment that makes a person feel "not welcome, accepted, desired, or solicited." RCW 49.60.040(14).

105.     WLAD makes it unlawful for "any person or the person's agent or employee to commit an act" of, among other things, discrimination in a place of public accommodation. RCW 49.60.215. This provision imposes direct liability on employers for the discriminatory conduct of their agents and employees.



106.     It is an unfair practice for a person in the operation of a place of public accommodation to fail or refuse to make reasonable accommodation to the known physical, sensory, or mental limitations of a person with a disability. WAC 162-26-080(1).

107.     Fairfax's practice of unjustified, unsupervised, and undocumented strip- and cavity-searches denies those experiencing mental illness from receiving the treatment they present for and are entitled to receive. Fairfax's humiliating, unchecked search practices proximately resulted in negative treatment outcomes for Jane Doe and the Class, as well as substantial mental and physical anguish. These practices are substantially motivated by discriminatory animus towards people with serious mental health conditions requiring inpatient treatment.

108.     Fairfax's practice of recording patients during strip- and cavity-searches restricts those experiencing mental illness from receiving the treatment they present for and are entitled to receive. Fairfax's humiliating video recording practices proximately resulted in negative treatment outcomes for Jane Doe and the Class, as well as substantial mental and physical anguish. This practice is substantially motivated by discriminatory animus towards people with serious mental health conditions requiring inpatient treatment.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of all Class members, pray that this Court:

A.     Certify the Class, name Plaintiff as representative of the Class, and appoint her lawyers as Class Counsel;

B.     Enter judgment against Fairfax Behavior Health in favor of Plaintiff and the Class;

C.     Award Plaintiff and the Class members damages for pain and suffering, and compensatory and punitive damages;

D.     Injunctive relief including preliminary and permanent injunctions restraining Fairfax from indiscriminately strip searching patients and/ or recording strip searches and

CLASS ACTION COMPLAINT - 19
Case No.
003229-11/1121825 V1



HB HAGENS BERMAN

1301 SECOND AVENUE, SUITE 2000 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

1    requiring Fairfax to create protocols for conducting searches that require an individualized

2    assessment of immediate danger to self or others;

3        E.    Injunctive relief including preliminary and permanent injunctions restraining

4    Fairfax from recording patients during strip- and cavity-searches and in other areas where

5    patients undress and requiring Fairfax to create protocols controlling the use of video-recording

6    and preservation of video-recordings; and

7        F.    Award Plaintiffs their reasonable attorneys' fees and costs.

8                                **JURY TRIAL DEMANDED**

9        Plaintiffs demand a trial by jury on all issues so triable.

10

11   Dated: April 30, 2019                    Respectfully submitted,

12                                            HAGENS BERMAN SOBOL SHAPIRO LLP

13                                            By */s/ Steve W. Berman*
                                                Steve W. Berman, WSBA No. 12536
14                                            */s/ Shelby R. Smith*
                                             Shelby R. Smith, WSBA No. 31377
15                                           1301 Second Avenue, Suite 2000
                                             Seattle, WA 98101
16                                           Telephone: (206) 623-7292
17                                           Facsimile: (206) 623-0594
                                             steve@hbsslaw.com
18                                           shelby@hbsslaw.com

19                                           */s/ Alexa Polaski*
20                                           Alexa Polaski, WSBA No. 52683
                                             */s/ Stacie Siebrecht*
21                                           Stacie Siebrecht, WSBA No. 29992
                                             Disability Rights Washington
22                                           315 Fifth Avenue South, Suite 850
23                                           Seattle, WA 98104
                                             Telephone: (206) 324-1521
24                                           alexap@dr-wa.org
                                             stacies@dr-wa.org
25
26                                           *Attorneys for Plaintiffs*

27

28

CLASS ACTION COMPLAINT - 20
Case No.
003229-11/1121825 V1



1301 SECOND AVENUE, SUITE 2000 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594